**SO ORDERED.**

**SIGNED this 27 day of August, 2015.**

_____
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:

CASE NO. 12-03128-8-SWH

WILLIAM DOUGLAS PARKER, JR.
DIANA LYNNE PARKER

      DEBTOR

### ORDER REGARDING FEE APPLICATION OF GEORGIA CAPITAL, LLC

The matter before the court is the application for reimbursement of legal fees, costs and expenses filed by Georgia Capital, LLC ("GCAP"). A hearing was held on March 31, 2015, in Raleigh, North Carolina.

### BACKGROUND

William Douglas Parker, Jr., and Diana Lynne Parker (the "debtors") are the owners of various tracts of real property in North Carolina, and prior to filing for bankruptcy, had engaged in the business of developing real estate in and around Raleigh. The debtors are the primary shareholders and officers of Gregory & Parker, Inc. ("G&P") and Gregory & Parker – Seaboard, LLC ("G&P – Seaboard") (collectively, the "Companies"). To advance certain development projects, the debtors obtained loans from GCAP in 2009 and 2010.

On February 27, 2009, the debtors obtained the initial GCAP loan in the original principal amount of $2,550,000.00 ("First Loan"). As security for the First Loan, GCAP was granted a deed of trust to roughly 70 acres of undeveloped real property owned by the debtors in Garner, North Carolina and a 1.25 acre tract of land on Semart Drive in Raleigh owned by G&P. Later, the First Loan was modified to provide, as additional collateral, a .22 acre strip of land on Semart Drive. On October 14, 2010, the debtors obtained a second GCAP loan in the original principal amount of $1,400,000.00 ("Second Loan"). To secure the Second Loan, GCAP was granted a deed of trust encumbering the debtors' 262.41 acre farm in Garner and G&P's tracts in downtown Raleigh located at 518 South West Street, 801 Halifax Street, 807 Halifax Street and 5 West Franklin Street.

The debtors ultimately defaulted under the loans by failing to pay upon maturity on August 31, 2011. As a result, GCAP declared the loans in default and instituted foreclosure proceedings. On April 25, 2012, the debtors filed a petition in bankruptcy under chapter 11.[1] GCAP filed a proof of claim on June 8, 2012 in the total amount of $4,186,317.33, which included the principal balance of $3,950,000.00 and interest in the amount of $345,805.91, less a contingency reserve of $104,280.95 and a cash collateral reserve of $12,250.00.

On October 22, 2013, pursuant to the Order dated August 2, 2013 in the Companies' Case, certain of G&P's real property was sold to William Peace University for $20,750,000.00. Of this amount, GCAP received the sum of $3,100,000.00 as partial payment on its secured claim, and a balance of $1,744,444.49 ("Escrow Amount") was placed in the trust account of the closing attorneys pending further court order. Pursuant to the Order dated April 29, 2014 in the Companies'

---

[1] The Companies filed separate petitions under chapter 11 on February 22, 2012. Case Nos. 12-01382-8-SWH; 12-01383-8-SWH. The cases were authorized to be jointly administered by Order dated April 3, 2012 ("Companies' Cases").

Case, GCAP received the additional sum of $1,200,000.00 from the Escrow Amount and was deemed to hold a subordinated lien in the amount of $418,544.49. The debtors retain sales proceeds in the sum of $122,595.11 ("Sales Proceeds") from the sale of a portion of GCAP's collateral, to which GCAP's lien attached pursuant to the Order dated October 24, 2014, and also continue to hold real property collateral.

On March 11, 2013, the debtors filed an objection to GCAP's claim to the extent that it included a default interest component, and by Order dated November 19, 2014, the court allowed the debtors' objection by disallowing the default interest portion of GCAP's claim in its entirety.[2] The November 19, 2014 Order further directed GCAP to file an amended statement of claim calculated at the contract non-default rate of interest both pre- and post-petition. GCAP filed its amended proof of claim on February 2, 2015, which showed the amount of principal and interest remaining on the claim to be $0.00. On January 6, 2015, the debtors filed a motion seeking authorization to use the Sales Proceeds to pay administrative claims, to which GCAP objected on the grounds that such proceeds may still be subject to its lien. At a hearing on January 28, 2015, the court directed GCAP to file its initial application for fees, costs and expenses pursuant to 11 U.S.C. § 506(b) in order to resolve the issue.

On February 11, 2015, GCAP filed its initial application for fees, costs and expenses incurred through January 31, 2015. In its application, GCAP requests $355,464.88 in attorneys' fees[3] and $12,618.94 in costs, less $104,280.95 held in a contingency reserve account. These fees and expenses were incurred by four law firms in the following respective amounts: Nexsen Pruet,

---

[2]GCAP filed a notice of appeal on December 2, 2014.

[3]This figure includes $332,029.43 in attorneys' fees and $23,435.45 in legal expenses.

PLLC, $106,824.97; Horack Talley, $151,847.11; Miller & Martin, $92,574.64; and The Law Office of John T. Benjamin, Jr. P.A., $4,225.86.[4]  GCAP contends that it is entitled to reimbursement under § 506(b) by virtue of its secured status, because the loan documents provide for such recovery, and because the fees and costs were reasonably and necessarily incurred in protecting its rights and interests in collateral.  Objections were filed by both the bankruptcy administrator ("BA") and the debtors.  The BA and the debtors each objected to the billing entries submitted by GCAP on the grounds that significant redactions therein prevented adequate review.[5]  The debtors listed additional grounds for their objection.  The debtors argue that many of the fees exceeded the scope of the loan documents and are therefore not recoverable, and also that fees are not recoverable under North Carolina law because GCAP failed to demonstrate compliance with the notice requirements of N.C. Gen. Stat. § 6-21.2.  Additionally, the debtors contend that it was unreasonable for GCAP to employ four different law firms, and that the fees are unreasonable because GCAP was never in danger of nonpayment.  Further, the debtors argue that the high non-default rate of interest already effectively compensated GCAP for its attorneys' fees.

## DISCUSSION

GCAP claims entitlement to fees, costs and expenses pursuant to § 506(b), which provides that:

---

[4] According to Exhibit A to GCAP's fee application, the total amount billed by these four firms adds up to $355,472.58, which varies from the amount of fees sought in GCAP's prayer for relief by $7.70.  In the absence of any explanation as to these differing amounts, the court will use the $355,464.88 figure provided in GCAP's prayer for relief as the total amount of fees sought.

[5] At the hearing on the application, GCAP supplied the court with unredacted versions of the billing entries for an *in camera* review.

4

> To the extent that an allowed secured claim is secured by property the value of which . . . is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

Section 506(b) applies to claims for post-petition fees, costs and expenses. See In re Croatan Surf Club, LLC, Case No. 11-00194-8-SWH, 2012 WL 1906386, at *6 (Bankr. E.D.N.C. May 25, 2012) (analyzing and allowing pre-petition interest and fees under § 502 and post-petition fees and interest under § 506). As an initial matter, the court notes that GCAP's fee application includes fees and costs incurred both pre- and post-petition.[6] In light of the differing Code sections applicable to pre- and post-petition fees and costs, the court will separately address the pre- and post-petition amounts, and turns first to the requested post-petition fees and costs under § 506(b). To show entitlement to the requested post-petition amounts, GCAP must show that: (1) it is oversecured; (2) the underlying agreement provides for such fees and costs; and (3) the requested fees and costs are reasonable. In re Gwyn, 150 B.R. 150, 154 (Bankr. M.D.N.C. 1993). The court retains broad discretion in determining the amount of fees and expenses to be allowed under § 506(b). Id.

The court will first address whether GCAP is oversecured. The debtors argue that GCAP is not an oversecured creditor for purposes of § 506(b) because the collateral granted by G&P cannot be considered in determining GCAP's secured status in *this* case. However, the debtors admitted at the hearing that they simply had no support for this argument. Their argument also stands in direct contradiction to previous representations made by the debtors. Part of the basis relied on by the debtors in objecting to the default rate of interest component of GCAP's claim was that GCAP

---

[6] Although the fee application does not demarcate between pre- and post-petition fees, the court finds that the fee application contains billing entries for pre-petition services in the amount of $5,980.36.

faced little or no risk because it was well oversecured. This argument also lacks legal merit, as courts have expressly determined that, at least with regard to affiliated debtor entities, collateral is to be aggregated when determining oversecured status. See In re Residential Capital, LLC, 501 B.R. 549, 598 (Bankr. S.D.N.Y. 2013) (creditor entitled to aggregate collateral across debtor entities); In re SW Hotel Venture, LLC, 460 B.R. 4 (Bankr. D. Mass. 2011) (collateral pledged by all affiliated debtors is considered in determining secured status), *aff'd in part and rev'd on other grounds sub nom.* SW Boston Hotel Venture, LLC v. City of Boston (In re SW Boston Hotel Venture, LLC), 479 B.R. 210 (B.A.P. 1st Cir. 2012). The court finds that any other interpretation of § 506(b) would simply "lead to inequitable and illogical results." Residential Capital, 501 B.R. at 598. The reasoning outlined in Residential Capital is instructive:

> If, to be oversecured, and thus entitled to payment in full of all amounts owing, including postpetition interest, fees, costs, and charges in a bankruptcy case, secured lenders were required to be oversecured at a single entity, credit agreements and indentures might begin to prohibit corporate families from employing the type of complex subsidiary and affiliate structures that are currently commonplace and borrowers will be required to hold all collateral at a single entity.

501 B.R. at 602. Therefore, the court concludes that the first requirement under § 506(b), oversecurity, is satisfied.

Next, the court must consider whether the underlying loan documents encompass the services for which the fees and costs were incurred. The court must necessarily find that the loan documents include a provision entitling GCAP to attorneys' fees and costs, and also must find that the fees and costs for which GCAP seeks compensation fall within the scope of the provision. Thus, the court must analyze the loan documents in comparison with the billing entries. Both the First and Second Loan provide the following simple language: "In the event this Note or any part thereof is collected by or through an attorney at law, Maker agrees to pay all costs of collection, including but not

6

limited to, reasonable attorney's fees and court costs." To the extent that GCAP's fees and costs consist of collection efforts, they will fall under the terms of the agreement and satisfy this prong of the analysis. The debtors contend that certain fees for which GCAP seeks reimbursement were incurred outside the scope of this provision, including those incurred: pursuant to efforts to dismiss the debtors' case; objecting to the debtors' efforts to sell property; coordinating objections with Conan McClain, another creditor in the debtors' case; objecting to the debtors' motions to hire professionals; and complying with third party discovery and subpoenas.

Attorneys' fee provisions are strictly construed. See Gwyn, 150 B.R. at 155. Clauses covering "collection efforts" do not encompass all services rendered in connection with a debtor. Id. Rather, the pertinent consideration is whether the services were incurred to enforce an obligation and were in furtherance of collection. See id. at 156. Collection includes "'anything done in an effort to secure or obtain payment of a debt or to convert property into money,' including acts to protect collateral with the aim of eventual collection," In re Dwiggins, 359 B.R. 717, 722 (Bankr. W.D. Ark. 2007) (quoting In re Williams, 183 B.R. 895, 899 (D. Kan. 1995)), as well as participating in proceedings to expedite collection and preserve assets, In re Winslow, Case No. 10-06745-8-JRL, 2011 WL 5902619, at *3 (Bankr. E.D.N.C. June 22, 2011) (quoting Telerent Leasing Corp. v. Boaziz, 200 N.C. App. 761, 766-67, 686 S.E.2d 520, 524 (2009)). Collection activities have been deemed to include: defending suits initiated by the debtor to the extent that doing so is necessary to the ability to collect; attending 341 meetings; filing proofs of claim; objecting to confirmation; objecting to the sale of collateral; legal research concerning the aforementioned actions; negotiations regarding plan provisions; and negotiations regarding use of creditor's cash collateral. See Dwiggins, 359 B.R. at 723-25; Unsecured Creditors' Comm. 82-00261c-11A v.

7

Walter E. Heller & Co. Se., Inc., 768 F.2d 580, 581 (4th Cir. 1985); In re Steel Network, Inc., Case Nos. 09-81230, 09-81231, 2011 WL 4002206, at *4 (Bankr. M.D.N.C. June 27, 2011); In re Mills, 77 B.R. 413, 419 (Bankr. S.D.N.Y. 1987).  On the other hand, courts have reduced or disallowed fees: for title work services done for a title insurance company, Gwyn, 150 B.R. at 155-56; for fees incurred defending itself in a civil action initiated by a shareholder of the debtor for tortious interference with contract, Steel Network, 2011 WL 4002206, at *3; and for services in connection with the closing of a sale, Mills, 77 B.R. at 419 (not covered by provision allowing fees for protecting or defending rights or upholding creditor's lien).

GCAP seeks post-petition attorneys' fees in the amount of $349,484.52 incurred by four separate law firms: Nexsen Pruet, Horack Talley, Miller & Martin, and the Law Office of John T. Benjamin, Jr.  These firms provided various services during the period of April 2012 through January 2015.  The extensive services provided include: handling pre-petition foreclosure proceedings; reviewing filings and advising GCAP as to the effect of the bankruptcy; conferences with the debtors' counsel and the trustee; conferring with GCAP representatives; legal research and preparing briefs; participating in mediation; responding to various motions and appearing in court; reviewing and filing objections to the debtors' plan and disclosure statement; preparing motions, including a motion for relief from stay and a motion to convert or dismiss; reviewing motions filed by other creditors; accounting on the loans and reserve accounts; and reviewing and advising on tax issues.

The court finds that the fees incurred for services relating to the debtors' objection to claim fall squarely within the scope of the attorneys' fee provision, as defending the objection was necessary to GCAP's ability to collect sums provided for under the loan documents.  Additionally,

8

GCAP's actions attempting to collect from Company property, including objecting to the debtors' motions to sell and hire professionals and conferring with the debtors' counsel, the client and other lienholders,[7] were related to GCAP's protection of its interest in collateral and ultimate collection on the debt.  Additionally, filing the above-referenced objections and motions and reviewing motions filed by other creditors that could have affected GCAP's recovery, such as Mr. McClain's motion to convert, were in furtherance of collection.  Deferring a determination of whether the fees were reasonable, the court finds that the services recounted above were aimed at collection and were provided for by the loan documents.  The court also finds that the following costs were covered by the loan documents: travel expenses for GCAP representatives, telephone conference fees, and mediation fees.

However, certain fees and costs incurred by GCAP were not reasonably within the scope of collection activities.  These fees include those incurred in responding to and complying with discovery requests and subpoenas from Mr. McClain.  This encompasses fees billed by Nexsen Pruet in the amount of $1,628.00, by Horack Talley in the amount of $4,696.84, and by Miller & Martin in the amount of $555.00.  The court will also disallow recovery of $947.00 billed by Nexsen Pruet for routine review of appellate procedural rules.  Additionally, the court finds that fees in the amount of $118.00 incurred consulting with counsel for Mr. McClain about the status of the hearing on the objection to claim does not relate to collection.  Therefore, $7,944.84 of the requested fees are disallowed as being outside of the scope of the attorneys' fee provision.  The court finds that certain

---

[7]Regions Bank held a first position deed of trust to property that GCAP had a security interest in.

costs are also outside the scope of collection and must be disallowed, namely, meals billed by GCAP in the amount of $60.60.

Notwithstanding the court's determination that certain of the aforementioned fees and costs were provided for under the loan documents, the court still must find that those fees and costs are reasonable. The debtors maintain that the fees are not reasonable, as GCAP has never been in danger of nonpayment, charged a high non-default interest rate that already compensated it for attorneys' fees, and has not demonstrated compliance with the notice requirements of N.C. Gen. Stat. § 6-21.2. The debtors also argue that it was unreasonable for GCAP to use four different law firms and contest the fees to the extent they were incurred in an attempt to collect default interest.

The reasonableness limitation found in § 506(b) serves to prevent squandering of estate assets by oversecured creditors that "fail to exercise restraint in the attorneys' fees and expenses they incur, perhaps exhibiting excessive caution, overzealous advocacy and hyperactive legal efforts." Gwyn, 150 B.R. at 155. It has been said that the key determinant is whether the creditor engaged in "actions that similarly situated creditors might reasonably conclude should be taken." In re F.B.F. Indus., Inc., Case No. 91-24613DWS, 1995 WL 691893, at *4 (Bankr. E.D. Penn. Nov. 15, 1995) (quoting Dalessio v. Dalessio (In re Dalessio), 74 B.R. 721, 723 (B.A.P. 9th Cir. 1987)) (internal quotations omitted). In that regard, the requested fees need not have been *actually* necessary; rather, the creditor simply must have *reasonably believed* they were necessary. Mason & Dixon Lines, Inc. v. First Nat'l Bank of Boston, 86 B.R. 476, 484 (M.D.N.C. 1988). In conducting the reasonable fee inquiry, the court must consider the twelve factors enumerated in Barber v. Kimbrell's, Inc., 577 F.2d 216 (4th Cir. 1978), which the U.S. Court of Appeals for the Fourth Circuit adopted from Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974). Steel Network, 2011 WL

10

4002206, at *5. The Johnson factors are as follows: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to properly perform the service; (4) the preclusion of other employment due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Id. (citing Johnson, 488 F.2d at 717-719). The proper procedure is to first calculate the lodestar figure using the Johnson factors to come up with a reasonable hourly rate and reasonable number of hours. Id. at *5 (quoting Daly v. Hill, 790 F.2d 1071, 1078 (4th Cir. 1986)). This figure results in a presumptively reasonable and fully compensatory fee award. Id. The applicant bears the burden of proving reasonableness. Steel Network, 2011 WL 4002206, at *6. The court will refer to a number of the Johnson factors in analyzing the present fee request.

Before considering the debtors' reasonableness objections, the court will turn to the argument that GCAP cannot recover post-petition attorneys' fees for allegedly failing to comply with the notice requirements of N.C. Gen. Stat. § 6-21.2. The Fourth Circuit rejected this argument in Unsecured Creditors' Comm. 82-00261c-11A v. Walter E. Heller & Co. Southeast, Inc. (In re K.H. Stephenson Supply Co.), 768 F.2d 580 (4th Cir. 1985), in which it adopted the majority view that attorneys' fees are recoverable as part of a secured claim under § 506(b) notwithstanding contrary state law. 768 F.2d at 583 (specifically considering N.C. Gen. Stat. § 6-21.2); see also JP Morgan Chase Bank v. ELL 11, LLC, 414 B.R. 881, 884 (M.D. Ga. 2008) ("the [Eleventh Circuit] concurred with the four other circuits that have addressed the [relation between state law

11

enforceability and § 506(b)] by concluding that contractual enforceability under state law, or lack thereof, does not negate the applicability of the § 506(b) reasonableness standard.") (citing In re Welzel, 275 F.3d 1308, 1315 (11th Cir. 2001)); First W. Bank & Trust v. Drewes (In re Schriock Constr., Inc.), 104 F.3d 200 (8th Cir. 1997); Blackburn-Bliss Trust v. Hudson Shipbuilders, Inc. (In re Hudson Shipbuilders, Inc.), 794 F.2d 1051 (5th Cir. 1986); Joseph F. Sanson Inv. Co. v. 268 Ltd. (In re 268 Ltd.), 789 F.2d 674 (9th Cir. 1986)); Colliers ¶ 506.04[3][b] (legislative history shows that attorneys' fees are allowed despite such fees being unenforceable under state law; most courts hold that federal law applies over state law).  The debtors' citation to Three Sisters Partners, L.L.C. v. Harden (In re Shangra-La, Inc.), 167 F.3d 843 (4th Cir. 1999), is misplaced; this case involved attorneys' fees under § 365 rather than § 506(b), and therefore is not relevant to the court's analysis. Furthermore, the Shangra-La court itself recognized the meaningful distinction between these two sections of the Code, stating that the language of § 506(b) "indicate[s] clear congressional intent to displace state law to the extent that it might be contrary to the written agreement." 167 F.3d at 851, n.8.[8]  Therefore, GCAP was not required to comply with N.C. Gen. Stat. § 6-21.2, and any failure to do so is not fatal to its application for attorneys' fees under § 506(b).

With the Johnson factors in mind, the court next must consider the reasonableness of GCAP's fee application.  The first factor, the time and labor required in the case, involves considering whether the work performed is legal work and whether the time spent was reasonable. Steel Network, 2011 WL 4002206, at *6.  This factor is particularly relevant to this case.  Included in the evaluation is the extent to which services were unnecessarily duplicative or ministerial.  Id.

---

[8]The Shangra-La court further stated that § 365(b)(1)(B) does not create an independent right to attorneys' fees, whereas § 506(b) does create such a right.  167 F.3d at 849, 851 n.8.

At the hearing, counsel for GCAP represented that the firms it employed were all engaged in performing distinct services on varying issues. However, upon review of the fee applications, the court has discovered numerous instances of duplicative billing – both within and between the firms. This is evidenced by multiple attorneys working on a single project, reviewing each other's work, extensive inter- and intra-firm telephone conferences and e-mails, and even instances of double billing. For example, both Miller & Martin and Horack Talley billed for services involving: cash collateral, proof of claim, sale of collateral, reviewing and objecting to the debtors' plan, applications to employ, reviewing monthly reports, reviewing motions filed by other creditors, reviewing the status of the case, responding to discovery requests and subpoenas, filing motions, reviewing appraisals, updating accounting, reviewing and responding to motions filed by the debtors, reviewing briefs, researching default interest, reviewing and responding to the debtors' objections to claim, and reviewing orders. While surely these services were performed in satisfaction of duties owed to their client, fees attributable to "overlawyering" are not properly billed to the debtor. In re Davidson Metals, Inc., 152 B.R. 917, 921 (Bankr. N.D. Ohio 1993). Given the numerous instances of duplication, the court finds it reasonable to apply a reduction, which will be accounted for in the court's final calculation. See Steel Network, 2011 WL 4002206, at *7 (finding it unreasonable that five different attorneys in one office worked on the matters, which resulted in overlapping involvement and numerous inter-office conferences; applicants failed to show why using multiple attorneys was necessary or reasonable); In re McCormick, 417 B.R. 372, 375 (Bankr. M.D.N.C. 2008) (should disallow fees for services involving unnecessary duplication); In re Green Valley Beer, 281 B.R. 253, 258 (Bankr. W.D. Penn. 2002) (firm used six different attorneys, half of whom billed more than 50 hours of work, and also included work that could have been done by

paralegals at a lower rate); Citicorp Savings of Fla., a Fed. Savings and Loan Assoc. v. Oliver (In re Oliver), 183 B.R. 87, 92 (Bankr. W.D. Penn. 1995) (unnecessary and unreasonable to employ firm whose services consisted almost entirely of conferences and correspondence with local counsel and reviewing local counsel's work).

The application also seeks reimbursement for several instances of ministerial work that is not properly billed to the debtors. Examples of ministerial work included in the fee application include: communicating with courtroom staff; printing and organizing exhibits; printing, reviewing, and calendaring; filing pleadings; scanning documents; preparing motions to continue; reviewing the docket; checking on rules; pulling copies of bankruptcy attorney information; preparing certificates of services; and requesting transcripts. To account for certain specific instances of ministerial services, the court will reduce the fee award by $9,185.67. See McCormick, 417 B.R. at 375 (should disallow fees for purely ministerial services); In re Ward, 190 B.R. 242, 248 (Bankr. D. Md. 1995); Davidson Metals, 152 B.R. at 921.

Also relevant to the time and labor required in this case, although not dispositive, is the amount billed by the debtors' counsel. The fees billed by the debtors' counsel provides "at least some evidence of the scope of the litigation and the significance of the issues." In re Villa Capri of Ga. Assocs. Ltd. P'ship, 141 B.R. 257, 264 (Bankr. N.D. Ga. 1992); see also In re Digital Products Corp., 215 B.R. 478, 482 (Bankr. S.D. Fla. 1997); Davidson Metals, Inc., 152 B.R. at 920; In re Wire Cloth Products, Inc., 130 B.R. 798, 814 (Bankr. N.D. Ill. 1991). At the hearing, counsel for the debtors represented that they incurred $223,328.72 in fees for the entire duration of the case, whereas GCAP seeks to recover post-petition fees amounting to $349,484.52. Based on the debtors' representations, GCAP incurred more than one and a half times the amount of fees incurred by the

14

debtors. This further lends credence to the court's finding that a reduction is warranted under this factor.

The next factor is the novelty and difficulty of the work involved. As in Steel Network, 2011 WL 4002206, this is a contentious case that has involved various objections, motions and hearings where the parties were at odds. While the court finds that these circumstances explain the use of multiple counsel and the high number of hours billed, the services were unreasonable to the extent that they involved duplicative and ministerial services. Since the court has already accounted for those unreasonable fees, a further reduction is not necessary under this factor.

The third factor is the skill required to perform the legal services at issue. The court finds that the services were of great importance to the client and its recovery, but that they were not needlessly complex. No adjustment is necessary under this factor.

The court will next consider the fifth factor, the customary fee for similar work in the community. The relevant market is the community in which the presiding court sits. Steel Network, 2011 WL 4002206, at *9. In this case, the relevant community is the Eastern District of North Carolina. The hourly fees billed by GCAP's counsel ranged between $130.00 to $440.00, averaging at around $282.00. The determination of prevailing hourly rates may be based upon personal knowledge of the court. Id. at *10. The court finds that the counsel employed by GCAP had a great deal of experience in bankruptcy matters, and based upon its own experience, the court finds that the rates charged fall within the range of rates charged for similar services in the community. See Villa Capri of Ga., 141 B.R. at 262. Similarly, the ninth factor, relating to the skill, experience and reputation of the chosen counsel, supports the hourly rates charged.

The eighth factor, the amount involved and the results obtained, appears to be the most logical factor under which to consider the debtors' argument that the fees requested should be disallowed to the extent that they were incurred pursuant to the objection to claim litigation, wherein the court ruled against GCAP. The court does not find merit in this argument, as the objection to claim centered on GCAP's right to recover a default rate of interest, which was explicitly provided for under the terms of the loan documents. It was certainly reasonable for GCAP to defend itself in this litigation, and the fact that it ultimately lost does not preclude it from recovering fees. "Success in bankruptcy litigation is not a prerequisite for an award of reasonable attorney fees to an oversecured creditor pursuant to Section 506(b)." In re Mills, 77 B.R. 413, 418 (Bankr. S.D.N.Y. 1987); see also In re Dwiggins, 359 B.R. 717, 72 (Bankr. W.D. Ark. 2007) (fee award does not depend on whether creditor prevailed in action for which services were provided). The debtors also argue that the fee request is unreasonable because GCAP was always oversecured and faced little risk. Although the court did find that GCAP faced little risk in its opinion disallowing the default rate of interest, Order Allowing Debtors' Objection to Claim, Doc. No. 537, this is not a basis to adjust the fee award. The court finds that no adjustment is warranted.

There is no evidence to warrant an adjustment based on the tenth factor, the undesirability of the case. GCAP employed four different law firms; this hardly shows that its case was so undesirable that it faced difficulty obtaining counsel. The eleventh factor involves the nature and length of the attorney-client relationship. There is evidence that while some of the attorneys were employed pre-petition, assistance of certain others was obtained in light of specialized issues arising in the case. This factor does not affect the amount of the award to be allowed in this case.

16

The twelfth factor involves a consideration of awards in similar cases and has already been discussed within the context of several other factors. The court also considers two additional circumstances that do not fit neatly into any of the Johnson factors, but which courts routinely consider in analyzing fee applications: lumping and inadequate records. Lumping describes where multiple services are listed as a single time entry, making it impossible for the court to determine how much time was dedicated to the specific tasks involved. Lumping is "universally disapproved" by bankruptcy courts. In re Staggie, 255 B.R. 48, 55 (Bankr. D. Idaho 2000) (quoting In re Automobile Warranty Corp., 138 B.R. 72, 76 (Bankr. D. Colo. 1991)) (internal quotations omitted). When presented with a fee application including lumped time entries, courts generally take one of two approaches. Some courts deny each lumped entry in its entirety, while others make a percentage adjustment. In re Pearson, No. 00-1086012, 2001 WL 1699657, at *5 (Bankr. M.D.N.C. Jan. 26, 2001); see also Green Valley Beer, 281 B.R. at 259. The time sheets included in the present fee application involve numerous instances of lumping. The court has taken this into consideration in arriving at its final fee award.

The problem with lumping is that it hinders courts from determining reasonableness, which is why it goes hand in hand with the principal that a vague or inadequate record will warrant adjustments to the award. See Green Valley Beer, 281 B.R. at 259 (recourse is premised on the applicant's failure to sustain its burden of proving reasonableness). Billing entries may not be descriptive enough to justify an award if services are lumped together or the record is vague. See Davidson Metals, 152 B.R. at 920 (disallowed portion of fees that were nondescriptive). Accordingly, the court will disallow the $15,155.00 "consultant fee" billed by Miller & Martin. Miller & Martin's time log leaves unanswered, among other things, what consulting services were

17

provided, by whom and for how long the services were utilized. It is simply too vague to be an allowed fee. See also Ward, 190 B.R. at 247 (disallowed compensation for vague phrases, such as "prepare correspondence"); Wire Cloth Products, 130 B.R. at 814 (entries omitted nature or purpose of phone calls or who spoke with).

The same descriptiveness principle applies with regard to reasonable costs. Although the cost sheet included with GCAP's application includes dates and amounts, it leaves off pertinent details such as who incurred the costs and specifically what they were incurred for. Therefore, the court finds that only the costs incurred for mediation in the amount of $1,715.00 should be allowed.

Accordingly, the court will allow GCAP post-petition fees and expenses in the amount of $200,704.17 for attorneys' fees and $1,715.00 for costs. After applying the $104,280.95 contingency reserve credit against such amount, the amount payable by the debtors amounts to $98,138.22.

The inquiry is not over, however, because the court must next consider GCAP's argument that the unreasonable post-petition fees should be allowed as an unsecured claim and enforced under § 502. The law is unsettled on this issue. However, the court need not decide this question because the fees and costs in question are not enforceable under § 502. In that regard, the following discussion is equally applicable to the pre-petition fees sought in the fee application which the court finds are similarly barred by § 502. Section 502 provides that:

> (a) A claim or interest . . . is deemed allowed, unless a party in interest . . . objects.
> (b) Except as provided . . . if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that –
> (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement *or applicable law* for a reason other than because such claim is contingent or unmatured; . . . .

18

§ 502. Therefore, enforceability under § 502 may be negated by applicable state law.

The debtors argue that applicable law precludes enforcement because GCAP failed to comply with the notice requirements of N.C. Gen. Stat. § 6-21.2. GCAP contests this and argues that it provided notice of the loans' maturity and demanded payment, as well as gave notice that it intended to exercise its remedies under the loan documents if not paid within 12 days. The court will now turn to the North Carolina notice requirements.

N.C. Gen. Stat. § 6-21.2 provides that an obligation to pay attorneys' fees shall be valid and enforceable, subject to the provision that:

> (5) The holder of an unsecured note or other writing(s) evidencing an unsecured debt, and/or the holder of a note and chattel mortgage or other security agreement and/or the holder of a conditional sale contract or any other such security agreement which evidences both a monetary obligation and a security interest in or a lease of specific goods, or his attorney at law, shall, after maturity of the obligation by default or otherwise, notify the maker, debtor, account debtor, endorser or party sought to be held on said obligation that the provisions relative to payment of attorneys' fees in addition to the "outstanding balance" shall be enforced and that such maker, debtor, account debtor, endorser or party sought to be held on said obligation has five days from the mailing of such notice to pay the "outstanding balance" without the attorneys' fees. If such party shall pay the "outstanding balance" in full before the expiration of such time, then the obligation to pay the attorneys' fees shall be void, and no court shall enforce such provisions.

§ 6-21.2(5). Courts interpreting § 6-21.2(5) have held that the notice requirement is strictly construed. Three Sisters Partners, L.L.C. v. Harden (In re Shangra-La, Inc.), 167 F.3d 843, 851 (4th Cir. 1999); McGinnis Point Owners Assoc. v. Joyner, 135 N.C. App. 752, 757, 522 S.E.2d 317, 320 (1999); Blanton v. Sink, 70 N.C. App. 70, 74-75, 318 S.E.2d 560, 564 (1984). The party requesting attorneys' fees must specifically advise the debtor that it seeks to enforce the provisions of the agreement relative to payment of attorneys' fees, and must inform the debtor of its right to pay the outstanding balance without incurring attorneys' fees. Branch Banking and Trust Co. v. Price, Case

No. 12-60466, 2013 WL 1189238, at *4 (5th Cir. Mar. 22, 2013); Davis Lake Cmty. Assoc., Inc. v. Feldman, 138 N.C. App. 292, 297, 530 S.E.2d 865, 869 (2000); Hedgecock Builders Supply Co. of Greensboro v. White, 92 N.C. App. 535, 543, 375 S.E.2d 164, 170 (1999); Blanton at 74-75, 318 S.E.2d at 564.  Failure to provide notice will result in the disallowance of attorneys' fees. In re Sanjeev and Rajeev, Inc. 411 B.R. 480, 483 (Bankr. S.D. Ga. 2008) (interpreting similar law).

The facts show that on September 1, 2011, GCAP sent notice to the male debtor that the loans had reached maturity on August 31, 2011, and declared a default and demanded immediate payment.  Ex. 1 to GCAP's Rely in Support of Fee Application, Doc. No. 635-1 at 2.  The notice further provided that in the event that the full amount outstanding was not paid by September 12, 2011, GCAP would exercise its remedies set forth in the loan documents. Id. at 3.  The notice did not, however, explicitly inform the debtors that it sought to enforce the attorneys' fee provision under the loan documents.  The notice does not reference attorneys' fees at all.  Therefore, the court finds that GCAP has not complied with the notice requirements of N.C. Gen. Stat. § 6-21.2(5), and applicable law prevents recovery of unreasonable fees and pre-petition fees under § 502.

## CONCLUSION

Accordingly, the court will disallow the requested pre-petition attorneys' fees in the amount of $5,980.36.  The court will allow as part of GCAP's secured claim post-petition fees and costs in the amount of $98,138.22.[9]  The remainder of the fees and costs being found unreasonable or outside the scope of the loan documents, in the respective amounts of $148,780.35 and $10,903.94, are disallowed.

**END OF DOCUMENT**

---

[9] This figure includes post-petition fees and costs in the respective amounts of $200,704.17 and $1,715.00, less the contingency reserve credit of $104,280.95.