IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Appeal No. 5:15-CV-25-F

| | |
|---|---|
| IN RE: ) | |
| ) | |
| WILLIAM DOUGLAS PARKER, JR., and ) | |
| DIANA LYNNE PARKER, ) | |
| ) | |
| Debtors, ) | |
| _____ ) | |
| ) | |
| GEORGIA CAPITAL, LLC, ) | |
| ) | **ORDER** |
| Appellant, ) | |
| ) | |
| v. ) | |
| ) | |
| WILLIAM DOUGLAS PARKER, JR., and ) | |
| DIANA LYNNE PARKER, ) | |
| ) | |
| Appellees. ) | |

This matter is before the Court on an appeal from the Order of November 19, 2014 of the United States Bankruptcy Court for the Eastern District of North Carolina [DE-1-1]. In the order, the Bankruptcy Court allowed the Debtors' objection to Georgia Capital, LLC's ("GCAP") claim for pre- and post-petition default interest. For the reasons discussed below, the Court REVERSES IN PART and AFFIRMS IN PART the decision of the Bankruptcy Court.

I.    PROCEDURAL AND FACTUAL HISTORY

The facts of this case are not in dispute. The Debtors, owners of various tracts of land in North Carolina, acquired two loans from GCAP to pursue development projects. Both loans had a fixed interest rate of fifteen percent and a default interest rate of twenty-five percent. Under the

terms of the loans, GCAP did not disburse a large amount of the funds. Indeed, on the first loan, GCAP disbursed $1,717,000 of a $2,550,000 loan (sixty-seven percent distributed), while on the second loan GCAP distributed only $178,145.83 of a $1,400,000 loan (approximately thirteen percent distributed). Eventually, the Debtors were unable to meet the terms of the loans, and GCAP began foreclosure proceedings.

The Debtors filed their voluntary petition under Chapter 11 of the Bankruptcy Code on April 25, 2012. *See* Voluntary Petition [DE-2-1] at 3. On June 8, 2012, GCAP filed a secured proof of claim that included interest at the default rate of twenty-five percent. The Debtors objected to the inclusion of the default interest component of GCAP's claim.

In its order of November 19, 2014, the Bankruptcy Court allowed the Debtors' objection to GCAP's claim. The Bankruptcy Court based its decision primarily on equitable principles, finding that the default rate, both for pre- and post-petition interest, amounted to a penalty. In reaching that conclusion, the Bankruptcy Court applied the same equitable standards to both pre-petition default interest under 11 U.S.C. § 502 and to post-petition default interest under 11 U.S.C. § 506(b).

## II.  STANDARD OF REVIEW

District courts sit as appellate courts in bankruptcy under 28 U.S.C. § 158(a). Courts review conclusions of law *de novo* and findings of fact for clear error. *See In re Kielisch*, 258 F.3d 315, 319 (4th Cir. 2001).

## III.  ANALYSIS

GCAP raises three issues on appeal. First, GCAP argues the Bankruptcy Court erred when it disallowed GCAP's claim for pre-petition interest at the default rate under 11 U.S.C. § 502. Second, GCAP asserts that the Bankruptcy Court abused its discretion by qualifying Ira

Morris to testify as an expert witness. Third, GCAP argues that the Bankruptcy Court also erred when it disallowed GCAP's claim for post-petition interest at the default rate under 11 U.S.C. § 506(b).

The appellees argue that Bankruptcy Court applied the proper standards in denying both pre- and post-petition default interest, and that the Bankruptcy Court properly qualified Mr. Morris as an expert witness.

### A. Pre-Petition Default Interest Under 11 U.S.C. § 502

#### 1. The Bankruptcy Court's Decision

In analyzing GCAP's claim for default pre-petition interest, the Bankruptcy Court first looked to the statutory requirements of 11 U.S.C. § 502. Section 502 states that a claim of interest is "deemed allowed, unless a party in interest . . . objects." *See id.* § 502(a). If an objection is made, the court must then conduct a hearing to determine the amount of the claim. *See id.* § 502(b). The court must then allow the claim in the amount determined unless any of the enumerated exceptions applies. *See id.* The Bankruptcy Court found that the Debtors, in their objection, had introduced evidence indicating that the default interest rate claimed by GCAP amounted to a penalty. *See* Order of November 19, 2014 [DE-1-1] at 5.

The parties agreed that state usury laws did not apply and that the claim, including the default interest rate, did not exceed the value of the collateral. *See id.* at 6. However, the Bankruptcy Court evaluated whether the default interest rate was a penalty in consideration of the "equities of the case." *See id.* at 5 (quoting *In re Harvest Oaks Drive Assocs., LLC*, No. 10-03145-8-SWH, 2011 WL 124495, at *7 (Bankr. E.D.N.C. Jan 14, 2011)). The Bankruptcy Court looked to factors that courts had "traditionally examine[d] in determining whether to enforce a contractual default rate of interest." *See id.* at 6. In concluding that the default interest rate was a

3

penalty and that GCAP had failed to overcome the Debtors' objection, the court focused the bulk of its analysis on these equitable factors.

GCAP argues that the Bankruptcy Court erred by applying the equitable analysis for *post*-petition interest under 11 U.S.C. § 506(b) to GCAP's claim for *pre*-petition interest under 11 U.S.C. § 502. The Court agrees in part. The Bankruptcy Court properly began its analysis by evaluating the parties' burdens under the statutory requirements of section 502. However, the Bankruptcy Court erred when it applied equitable principles based on the statutory limitations of section 506 to GCAP's claim for pre-petition default interest under section 502. As discussed below, a creditor's rights under different statutes will determine the respective limitations of courts' equitable powers to adjust the award of interest. That is, while courts may apply equitable principles to section 502, they must do so within the circumscriptions imposed by the statutes outlining creditors' rights. As section 502 currently stands, courts may not exercise their equitable powers to deny creditors' claims for pre-petition interest.

### 2. Courts' may not use their equitable powers to overturn creditors' statutory rights.

A court's ability to exercise its equitable powers to adjust or deny a claim for default interest will depend on the extent of a creditor's statutory rights under the bankruptcy code. *See In re Dixon*, 228 B.R. 166, 172-75 (W.D. Va. 1998). The court finds the reasoning of *In re Dixon* on this point to be instructive and compelling. The *In re Dixon* court examined the interaction of courts' equitable powers with the requirements of the bankruptcy code, beginning its analysis with a holding from the Supreme Court that had originally applied broad equitable powers to claims for interest. *See id.* at 173 (quoting *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 165 (1946) ("[T]he touchstone of each decision on allowance of interest in bankruptcy . . . has been a balance of equities between creditor and creditor or between creditors and the

4

debtor."). However, the court then noted the Supreme Court's subsequent holding in *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235 (1989). In *Ron Pair*, the Supreme Court noted that the passage of the bankruptcy code "codif[ied] creditors' rights *more clearly than the case law* . . . [b]y defin[ing] the protections to which a secured creditor is entitled, and the means through which the court may grant that protection." *Ron Pair*, 489 U.S. at 248 (emphasis and latter two alterations in original) (quoting H.R. Rep. No. 95-595, at 4-5 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 5966). In other words, "[t]he reach of the bankruptcy court's equitable powers is consequently circumscribed by the legislature's intent to clarify creditors' rights through codification." *See In re Dixon*, 228 B.R. at 173.

After *Ron Pair*, the courts equitable powers must be used within the limits imposed by the bankruptcy code. *Id.* (quoting *In re Sublett*, 895 F.2d 1381, 1385 (11th Cir. 1990)). As it pertains to interest, the Eleventh Circuit held that, "[a]lthough an award of post-petition interest is governed generally by the equities of the case, the Bankruptcy Code provides oversecured creditors with certain statutory rights to interest." *In re Sublett*, 895 F.2d at 1386 (quoting *In re Anderson*, 833 F.2d 834, 836 (9th Cir. 1987)). These limitations provide oversecured creditors with a certain level of stability in knowing what their rights are because courts cannot arbitrarily overturn those rights in the name of equity. *See In re Lapiana*, 909 F.2d 221, 224 (7th Cir. 1990) ("[B]ankruptcy judges are not empowered to dissolve rights in the name of equity."). While the *Ron Pair* holding may sometimes lead to inequitable outcomes, courts may not rob the legislature of their jurisdiction.

In the context of section 506, the *In re Dixon* court held that courts could not equitably deviate from a contractually-agreed upon default interest rate where the contract rate does not (1) violate state usury laws, (2) function as a penalty, or (3) exceed the value of the collateral.

5

*See In re Dixon*, 228 B.R. at 174. In such cases, the *In re Dixon* court held that "the presumption in favor of the contract rate has not been rebutted." *Id.*[1] However, that equitable analysis applied only to section 506.

The extent of courts' equitable powers to adjust or deny default interest will particularly be affected by whether the claim is for pre- or post-petition interest. This is because "[a]fter a debtor files for bankruptcy, a creditor's rights are generally 'more restricted because of the codified public policy of giving a debtor an opportunity to attempt to reorganize.'" *See id.* at 175 (quoting *In re Hollstrom*, 133 B.R. 535, 540 (Bankr. D. Colo. 1991)). It follows that courts' equitable powers will be weaker before a debtor has filed for bankruptcy and broader afterwards. Because of this, the equitable analysis for pre- and post-petition default interest must accordingly differ, with the former being much more limited in its power and scope.

With respect to section 502, creditors' statutory rights appear so strong so as to possibly preclude bankruptcy courts from using their equitable powers to deny claims for pre-petition interest. Indeed, some courts have held that "an equitable analysis does not govern whether pre-petition default interest is allowable" altogether. *See In re 400 Walnut Assocs., L.P.*, 473 B.R. 603, 609 (E.D. Pa. 2012). Such a conclusion likely explains why this Court has been unable to find cases applying equitable principles to section 502 claims for pre-petition interest outside of the Eastern District of North Carolina. While the Court does not hold that equitable principles can never apply to claims for pre-petition interest, the language of section 502, as it currently stands, does not leave room for courts to exercise their equitable powers. Section 502 provides the exceptions that will allow a court to deny pre-petition interest. The only other exception is if

---

[1] As the Court discusses below, the *In re Dixon* court's discussion of the equitable analysis does not represent the full extent of courts' equitable powers to allow or deny post-petition interest.

6

the pre-petition default interest is not allowable under North Carolina law. None of those conditions apply here.

The Bankruptcy Court erred by applying equitable principles to GCAP's claim for pre-petition default interest without considering whether that application would dissolve GCAP's statutory rights. GCAP is entitled to the default rate of interest under 11 U.S.C. § 502. Accordingly, the Bankruptcy Court's holding that Georgia Capital was not entitled to pre-petition default interest is REVERSED.

### B.     Post-Petition Interest

GCAP argues that the Bankruptcy Court applied the incorrect standard to its claim for post-petition default interest under 11 U.S.C. § 506. GCAP again points to *In re Dixon* for the correct standard.

The *In re Dixon* court evaluated only three equitable factors when considering a claim for post-petition interest. *See* 228 B.R. at 176. Those factors were (1) whether the default interest rate violated state usury laws, (2) whether the claim exceeded the value of the collateral securing the claim, and (3) whether the default interest rate constituted a penalty. *See id.* As to the third factor, the *Dixon* court only evaluated (a) the effect the claim for default interest would have on other creditors, and (b) the effect the claim would have on the debtor's financial status and reorganization efforts. *See id.* However, the *Dixon* court's factors were not an exhaustive list, and other courts have considered a wider range of factors, including those used by the Bankruptcy Court in its pre-petition default interest analysis, in evaluating claims for post-petition default interest. *See, e.g., In re Deep River Warehouse, Inc.*, No. 04-52749, 2005 WL 1513123, at *3-4 (M.D.N.C. June 22, 2005) (outlining the four factors evaluated by the Bankruptcy Court and collecting cases from multiple jurisdictions applying the same). While the Bankruptcy Court did

not conduct the entire analysis for post-petition interest, instead only concluding that GCAP (1) had not met the less stringent standards of section 502 and therefore (2) could not meet the more stringent standards of section 506, the Court finds that the case law and the Bankruptcy Court's findings and analysis as to pre-petition default interest do support denial of GCAP's post-petition default interest claim. The post-petition default interest rate, under the equitable principles applied by the Bankruptcy Court, amounted to a penalty. Therefore, as to the Bankruptcy Court's denial of GCAP's claim for post-petition default interest under 11 U.S.C. § 506, the Bankruptcy Court's Order is AFFIRMED.

### C.    Mr. Morris's Qualification as an Expert Witness

District courts review a bankruptcy court's decision to admit the testimony of an expert or opinion witness only for clear abuse of discretion. *See Garrett v. Desa Indus., Inc.*, 705 F.2d 721, 724 (4th Cir. 1983). Here, the Court has reviewed parties' filings and finds that the Bankruptcy Court did not abuse its discretion in qualifying Mr. Morris as an expert witness. Mr. Morris graduated from Georgia Southern University with a degree in accounting, after which he was certified as a CPA. *See* Transcript [DE-4] 127:4-11. Thereafter, he attended continuing education programs dealing with real estate, development, financing, and valuation. *See id.* 127:15-128:8. During his career, lasting more than thirty-five years, Mr. Morris worked to acquire loans for a wide variety of real estate projects. *See id.* 129:12-130:4. In doing so, he dealt with essentially every type of possible loan. *Id.* 130:5-130:15. He further had experience with hard money loans and all types of lenders. *See id.* 130:16-133:22. Given these qualifications, the Bankruptcy Court did not abuse its discretion in admitting Mr. Morris's testimony as an expert witness. Therefore, the Bankruptcy Court's decision to admit Mr. Morris's expert testimony is AFFIRMED.

## IV.  CONCLUSION

For the foregoing reasons, the November 19, 2014 order of the Bankruptcy Court in Adversary Proceeding No. 12-03128-8-SWH is REVERSED IN PART and AFFIRMED IN PART. This matter is REMANDED to the bankruptcy court for further proceedings consistent with this opinion. The Clerk of Court is DIRECTED to close this case.

SO ORDERED.

This, the 17 day of September, 2015.

                                                                  _James C. Fox_
                                                                  JAMES C. FOX
                                                                  Senior United States District Judge