**SO ORDERED.**

**SIGNED this 22 day of June, 2018.**

*Stephani W. Humrickhouse*
**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

___

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:

WILLIAM DOUGLAS PARKER, JR.
DIANA LYNNE PARKER

CASE NO.
12-03128-8-SWH
CHAPTER 11

DEBTORS

### ORDER DETERMINING SCOPE OF REMAND

A hearing was conducted on March 13, 2018 in Raleigh, North Carolina on the application for attorney's fees filed by Georgia Capital, LLC ("GCAP"), D.E. 957. The sole issue before the court is whether matters raised by an objection filed on behalf of the bankruptcy estate remain subject to decision by this court or have been precluded by an order issued in this case on September 17, 2015 by the United States District Court for the Eastern District of North Carolina, D.E. 706 (the "District Court Order").

### BACKGROUND

William Douglas Parker, Jr. and Diana Lynne Parker filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on April 25, 2012.[1] Two companion cases were already pending: Gregory & Parker, Inc., Case No. 12-01382-8-SWH, and Parker-Seaboard, LLC, Case

---

[1] Mr. Parker has since passed away.

No. 12-01383-SWH, both filed on February 22, 2012 (the "Corporate Cases"). The Corporate Cases were administratively consolidated on April 3, 2012.

GCAP filed a proof of claim in this case on June 8, 2012 in the amount of $4,186,317.33 (the "Claim"). Claim No. 4-1.[2] The Claim is based on two promissory notes in the original principal amounts of $2,550,000 and $1,440,000, respectively, secured by several parcels of real property. The Claim further included $352,847.78 of accrued interest less $116,530.95 of reserves held. On March 11, 2013, the Parkers objected to the Claim, D.E. 192, incorporating by reference the objections to the related claims filed in the Corporate Cases.[3] Among other things, the stated bases for objecting to the Claim included: (1) an objection to the assessment of a default rate of interest as not reflecting the costs for monitoring and administering the loan; (2) inability to determine the date on which GCAP began assessing default interest; and (3) a contention that the collection of default interest was a disguised attempt to recover penalties. *See* D.E. 192, Ex. A.

An amended objection was filed on May 2, 2013, D.E. 233, incorporating by reference an amended objection filed in the Corporate Cases (the "Claim Objection"). *See* D.E. 233, Ex. A. The amended objection included additional bases challenging the default rate of interest, including the difference between the default rate and pre-default contract rate as unreasonable and the relative lack of sophistication of the debtors, as well as a contention that the pre-default rate was much higher than the prevailing market rate. *Id.* On May 14, 2014, the Parkers submitted a brief in

---

[2] Unless otherwise indicated, all citations to the docket or claims register are in the Parkers' individual case, Case No. 12-03128-8-SWH.

[3] The claims filed in the three cases differed in their calculations largely as a result of the differing petition dates. The claims in the Corporate Cases are discussed herein only to the extent that there are cross-references to the objections and briefs submitted in the various cases. The Corporate Cases ultimately converted to chapter 7. GCAP and the chapter 7 trustee resolved the objection to GCAP's claim as it related to the corporate debtors, and those cases are now closed. The Corporate Cases are not involved in the current controversy except to provide historical context.

support of their objection, detailing the equitable grounds on which they objected to the assessment of default interest. D.E. 443.

A hearing on the objection to the Claim as it related to the assessment of default interest was conducted on September 30, 2014 and October 1, 2014, and this court issued an order sustaining the objection dated November 19, 2014, D.E. 537 (the "2014 Order"). In the 2014 Order, the court found that GCAP was not entitled to recover prepetition default interest under 11 U.S.C. § 502 or postpetition default interest under 11 U.S.C. § 506 because the default interest functioned as a penalty. In so finding, the court considered whether:

> (1) the creditor faced a significant risk that the debt will not be paid;
> (2) the lower non-default rate of interest was the prevailing market rate;
> (3) the difference between the default and non-default rate was reasonable; and
> (4) the purpose of the default rate was to compensate the creditor for losses sustained as a result of the default or whether it was simply a disguised penalty.

2014 Order at 6 (citing *In re Deep River Warehouse, Inc.*, No. 04-52749, 2005 WL 1513123, at *3 (Bankr. M.D.N.C. June 22, 2005)).

GCAP appealed the 2014 Order to the United States District Court, which reversed that portion of the 2014 Order disallowing *pre*petition default interest and affirmed that portion of the 2014 Order disallowing *post*petition default interest. Specifically with respect to the prepetition default interest, the District Court Order provided:

> . . . While the Court does not hold that equitable principles can never apply to claims for pre-petition interest, the language of section 502, as it currently stands, does not leave room for courts to exercise their equitable powers. Section 502 provides the exceptions that will allow a court to deny pre-petition interest. The only other exception is if the pre-petition default interest is not allowable under North Carolina law. None of those conditions apply here.
> The Bankruptcy Court erred by applying equitable principles to GCAP's claim for prepetition default interest without considering whether that application would dissolve GCAP's statutory rights. GCAP is entitled to the default rate of interest under 11 U.S.C. § 502. Accordingly, the Bankruptcy Court's holding that Georgia Capital was not entitled to prepetition default interest is REVERSED.

District Court Order at 6-7. "This matter is REMANDED to the bankruptcy court for further proceedings consistent with this opinion." *Id.* at 9.

On January 25, 2018, GCAP filed an application for reimbursement of legal fees, costs and expenses pursuant to 11 U.S.C. § 506(b), D.E. 957 (the "Fee Application"). The Parkers filed an objection, D.E. 968 (the "Fee Objection"), requesting the court to "conduct a hearing to conclude the Debtors' previously undecided Objection concerning the Movant's request for allowance of prepetition default interest." In the Fee Objection, the Parkers maintain that the Claim Objection raised two arguments that had never been ruled upon: first, "that the allowance of default interest under the terms of the Loan Agreement would be unconscionable under applicable North Carolina state law and, therefore, should be denied," and second, "that to obtain interest prepetition under state law, the loan had to be noticed to the obligor that it was in default and that the balance was due and payable and no competent evidence was ever presented to the Court to show in fact that the loan had been properly called into default and notice of the same given to the appropriate parties." D.E. 968 at 3.

GCAP responded to the Fee Objection, first challenging the procedural vehicle for raising the default interest issue in response to an application for attorneys' fees, and second contending that all issues related to prepetition default interest were conclusively determined by the district court in the appeal. D.E. 994 at 2.

At the hearing on March 13, 2018, the parties agreed that the issue for the court to determine is whether the District Court Order, in remanding the matter to this court, left any argument open with respect to whether GCAP is entitled to prepetition default interest, or if the remand was solely to direct GCAP to amend the Claim to account for the disallowance of

4

*post*petition default interest. The Parkers further contend that if this court were to find the loan to be unconscionable under North Carolina law, then GCAP is not entitled to any further attorneys' fees. Should the court find that there are any further issues for determination, the parties requested an opportunity for further briefing based on the evidentiary record already established.

## DISCUSSION

### Reversal vs. Remand

The District Court Order remanded this matter to this court "for further proceedings consistent with this opinion," without further instructions. Had the District Court Order simply "reversed" this court, it might have suggested that the matter was over. The fact that it remanded "for further proceedings" suggests that there is something more for this court to do. *See Atlantic Coast Line Railroad Co. v. St. Joe Paper Co.*, 216 F.2d 832, 833 (5th Cir. 1954) (distinguishing between reversal and remand in Supreme Court's mandate). Indeed, the remand for further proceedings prevented the District Court Order from being a final, appealable order. *See Village Sav. Bank v. Willey (In re Willey)*, 808 F.2d 836 (4th Cir. 1986) (unpublished) ("A district court decision remanding a case to a bankruptcy judge for further proceedings generally will not be considered final, unless only a 'ministerial' task remains to be done on remand.") (citing *In re Fox*, 762 F.2d 54, 55 (7th Cir.1985)).

In *Atlantic Coast Line*, the Fifth Circuit was charged with determining the scope of remand from the Supreme Court after a district court order dismissing a bankruptcy proceeding was appealed, reversed by the court of appeals, and reversed and remanded "for further proceedings in accordance with the opinion of the Supreme Court." 216 F.2d at 833. The matter resumed in the district court, which again dismissed the proceeding, and an appeal returned to the Fifth Circuit. The appellee sought dismissal of the appeal, and the Fifth Circuit considered the issue as follows:

5

> The motion to dismiss should be overruled because this appeal involves entirely new issues, which were not decided or considered by the Supreme Court, and not disposed of by its reasoning or judgment, when this case was before it. 345 U.S. 948, 73 S. Ct. 866; 347 U.S. 298, 74 S. Ct. 574. The Supreme Court reversed the judgment of the Court of Appeals, and remanded the case to the District Court for further proceedings in accordance with its opinion; but it did not give any particular directions to the District Court and did not reinstate the latter's judgment which had been reversed by the judgment of the Court of Appeals. 5 Cir., 201 F.2d 325, 330. To reverse a judgment, according to Webster's dictionary, means to overthrow it by a contrary decision, to make it void, to undo or annul it for error. The mandate of the Supreme Court directed that the judgment of this court be reversed, with costs, and that this cause be remanded to the District Court for further proceedings in accordance with the opinion of the Supreme Court; but it further appears that the Supreme Court, by its writ of certiorari, had limited its own inquiry, and consequently its own jurisdiction, to the single question as to whether, under Section 77 of the Bankruptcy Act, the Interstate Commerce Commission had 'a power to force mergers.' 345 U.S. 948, 73 S. Ct. 866. By so limiting its writ of certiorari, the Supreme Court expressly declined to review [the Fifth Circuit's reversal on three separate grounds concluding that the bankruptcy proceeding should not have been dismissed].

216 F.2d at 833-34.[4]

While not directly analogous, the *Atlantic Coast Line* analysis guides this court in finding that when faced with a remand for further proceedings without specific instructions, this court must carefully review the District Court Order to determine what it did and did not decide.[5] The inquiry is essentially whether the law of the case doctrine precludes further review, and by extension, what, exactly, has been decided as the law of the case.

---

[4] *Atlantic Coast Line* differs from this case in that several bases were given by the lower courts to support their conclusions that the bankruptcy proceeding should or should not be dismissed that were not addressed by the Supreme Court, while here only one basis (of several proffered) for disallowing the prepetition default interest was addressed by this court and appealed to the district court.

[5] The court does not have the option of sending this matter back to the district court for clarification, as the judge rendering the District Court Order has since retired.

**Law of the Case**

"The law of the case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *TFWS, Inc. v. Franchot*, 572 F.3d 186, 191 (4th Cir. 2009). Among other policy justifications, "the law of the case doctrine affords litigants a high degree of certainty as to what claims are—and are not—still open for adjudication." *Ellis v. United States*, 313 F.3d 636, 647 (1st Cir. 2002). The law of the case doctrine applies in bankruptcy proceedings. *New Bern Riverfront Dev., LLC v. Weaver Cooke Constr., LLC (In re New Bern Riverfront Dev., LLC)*, 516 B.R. 316, 321 (Bankr. E.D.N.C. 2014).

The District Court Order did not take issue with this court's factual determinations; indeed, the District Court Order upheld the determination that the claimed default interest was in the nature of a penalty when it affirmed this court's finding that GCAP was not entitled to recover *post*petition default interest under 11 U.S.C. § 506. District Court Order at 8 ("the Court finds that the case law and the Bankruptcy Court's findings and analysis as to pre-petition default interest do support denial of GCAP's post-petition default interest claim."). Instead, the District Court Order found that this court applied the incorrect standard in reviewing the claim for *pre*petition default interest, stating, "The Bankruptcy Court erred by applying equitable principles to GCAP's claim for prepetition default interest without considering whether that application would dissolve GCAP's statutory rights." District Court Order at 7.

To reach its conclusion, the district court found "instructive and compelling" the reasoning of *In re Dixon*, 228 B.R. 166 (W.D. Va. 1998). District Court Order at 4. After reviewing the history of the adoption of the Bankruptcy Code and with it § 502, *Dixon* determined that *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235 (1989), requires the conclusion that the "reach

7

of the bankruptcy court's equitable powers is . . . circumscribed by the legislature's intent to clarify creditors' rights through codification." 228 B.R. at 173. The district court concluded that bankruptcy courts are "possibly preclude[d]" from using equitable powers to deny claims for prepetition interest, while also stating that it "does not hold that equitable principles can never apply to claims for pre-petition interest." District Court Order at 6.

Having stated that the bankruptcy court is limited to review of the parties' statutory rights without consideration of equitable principles, the district court noted that "[s]ection 502 provides the exceptions that will allow a court to deny pre-petition interest." District Court Order at 6. Section 502 provides, in relevant part,

> (a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects.
> (b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that –
>   (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured[.]

11 U.S.C. §§ 502(a), (b)(1).[6] In other words, under § 502(b)(1), if nonbankruptcy law would render a claim unenforceable, then it may be disallowed by the bankruptcy court. *See, e.g., In re Charles Street African Methodist Episcopal Church of Boston*, 481 B.R. 1 (Bankr. D. Mass. 2012) (denying claimed prepetition default interest as unenforceable under Massachusetts law where it operated as a penalty).

In *In re Market Center East Retail Property, Inc.*, 433 B.R. 335, 351 (Bankr. D.N.M. 2010), the bankruptcy court explained that where prepetition claims "do not fit into any of the categories

---

[6] The other enumerated exceptions in § 502 do not apply.

8

of 11 U.S.C. § 502(b)(2) through 502(b)(9), . . . they must be allowed under § 502(b) unless they are unenforceable under § 502(b)(1)." By way of further clarification, the court explained:

> This provision is most naturally understood to provide that, with limited exceptions, any defense to a claim that is available outside of the bankruptcy context is also available in bankruptcy. *See* 4 Collier ¶ 502.03[2][b], at 502–22 (explaining that § 502(b)(1) is generally understood to "make available to the trustee any defense" available to the debtor "under applicable nonbankruptcy law"—*i.e.,* any defense that the debtor "could have interposed, absent bankruptcy, in a suit on the [same substantive] claim by the creditor").

*Market Center East*, 433 B.R. at 351-52 (citing *Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric Co.,* 549 U.S. 443, 450, 449, 127 S. Ct. 1199, 167 L. Ed. 2d 178 (2007)). "That principle requires bankruptcy courts to consult state law in determining the validity of most claims." *Id.* Finding default interest to be "presumably enforceable under New Mexico law" without further discussion, the *Market Center East* court allowed the claim for prepetition default interest. *Market Center East*, 433 B.R. at 357.

*Charles Street* similarly explained the standard, then carefully considered whether the claim was enforceable under the applicable state law.

> In relevant part, § 502(b)(1) of the Bankruptcy Code states that the court "shall allow" a claim to which an objection has been filed "except to the extent that such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). A debtor may therefore assert any defense to a claim that is available outside of bankruptcy. *See Travelers Cas. and Sur. Co. of America v. Pacific Gas and Elec. Co.,* 549 U.S. 443, 450, 127 S. Ct. 1199, 167 L. Ed. 2d 178 (2007) ("creditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation") (Internal citation omitted). In order to determine whether to allow OneUnited's prepetition default interest, I must consider whether the 18 percent default rate it charged on the Church and Construction Loans would be enforceable under Massachusetts law.

9

481 B.R. at 10. The *Charles Street* court determined that the claimed prepetition default interest was unenforceable under Massachusetts law, as it operated as a penalty rather than a reasonable forecast of damages expected to occur in the event of a breach. 481 B.R. at 13.

Here, while the district court noted that "[t]he only other exception is if the pre-petition default interest is not allowable under North Carolina law[,]" District Court Order at 7, it did not cite *Travelers* or undertake any analysis or discussion of whether North Carolina law might preclude GCAP from recovering its claim of default interest. Instead, it summarily concluded that "[n]one of those conditions apply here."[7] It seems unlikely to this court that the district court would have assessed and determined in only five words that there is no basis to deny default interest in this case, particularly given that this court had considered only the equitable arguments in the first instance and thus only the equitable determination was on appeal. Based on the district court's heavy reliance on *Dixon*, it seems likely that the district court referred only to the parties' agreement that the default interest did not violate any state usury laws when it concluded that there were no applicable exceptions to § 502, and failed to consider whether there are other applicable state law principles beyond usury.

As cited by the district court, *Dixon* held that the equitable bases upon which a court might deviate from a default interest rate under § 506 (but not § 502) included (1) violation of state usury laws, (2) where the rate functions as a penalty, or (3) where the default rate leads the balance to exceed the value of the collateral. District Court Order at 5-6 (citing *Dixon*, 228 B.R. at 174). It appears that the district court concluded that these are the equitable bases that may not be considered in connection with a claim for *pre*petition default interest. In this case, the parties

---

[7] The court is somewhat perplexed by the choice of the word "conditions," rather than "exceptions," unless the district court meant something other than "exceptions."

conceded that the default interest was not usurious under North Carolina law and that the balance did not exceed the value of the collateral. District Court Order at 3. The basis for this court's denial of the prepetition default interest was that it constituted a penalty, which is the holding that the district court reversed. The district court's language suggests that it did not consider whether there were any other statutory bases under § 502 to deny the claim for prepetition default interest, and instead simply determined that the three bases delineated by *Dixon* would apply only under § 506 and not under § 502.[8]

In summary, the district court (1) concluded that this court did not apply the correct standard, (2) did not fully explain the correct standard, and (3) did not undertake the analysis under the correct standard itself. Indeed, nothing more was required by the district court, because the only basis upon which this court decided the issue – and the only ruling that was appealed – was whether the default interest operated as a penalty and thus should be disallowed under § 502. Thus, the law of the case is limited to this: purely equitable principles cannot be the basis for denying a claim for prepetition default interest. As a result, and in accordance with the analysis cited in *Atlantic Coast Line*, this court determines that because the review and decision on appeal was narrower than the issues now before the court, and because the district court remanded rather than simply reversed the matter, it is incumbent upon this court to determine whether there are circumstances under which North Carolina would not allow default interest that would result in disallowance of the claim under § 502.[9]

---

[8] Even this is an overly broad reading of *Dixon*, as usury under state law would be a statutory – not equitable – basis to deny *pre*petition interest under § 502.

[9] In other words, the court will consider whether there is any basis under which a state court, had the bankruptcy not been filed, would deny GCAP's claim to default interest.

**Res Judicata and Collateral Estoppel**

Traditional notions of claim preclusion further support this court's conclusion that it can still review GCAP's claim for prepetition default interest. *See Arizona v. California*, 530 U.S. 392, 410 (2000) ("[W]hile the technical rules of preclusion are not strictly applicable [in the context of a single ongoing original action], the principles upon which these rules are founded should inform our decision.").

Under principles of res judicata, often referred to as claim preclusion, "a prior judgment between the same parties can preclude subsequent litigation on those matters actually and necessarily resolved in the first adjudication." *First Union Commercial Corp. v. Nelson, Mullins, Riley and Scarborough (In re Varat Enterprises, Inc.),* 81 F.3d 1310, 1314–15 (4th Cir. 1996) (citations omitted). The rules of res judicata "apply to the decisions of bankruptcy courts." *Turshen v. Chapman,* 823 F.2d 836, 839 (4th Cir. 1987) (quoting *Katchen v. Landy,* 382 U.S. 323, 334, 86 S. Ct. 467, 475, 15 L. Ed. 2d 391 (1966)). Claim preclusion occurs when the following three conditions are satisfied:

> (1) the prior judgment was final and on the merits, [sic] and rendered by a court of competent jurisdiction in accordance with the requirements of due process; (2) the parties are identical, or in privity, in the two actions; and (3) the claims in the second matter are based upon the same cause of action involved in the earlier proceeding.

*Varat,* 81 F.3d at 1315 (citing *Kenny v. Quigg,* 820 F.2d 665, 669 (4th Cir. 1987)).

Here, because the District Court Order remanded the matter to this court for further proceedings, there is no final judgment. "A district court decision remanding a case to a bankruptcy judge for further proceedings generally will not be considered final, unless only a 'ministerial' task remains to be done on remand." *Village Sav. Bank v. Willey (In re Willey)*, 808 F.2d 836 (4th Cir. 1986) (unpublished) (citing *In re Fox*, 762 F.2d 54, 55 (7th Cir. 1985)). Further, as discussed

above, the court finds that the specific issues raised by the Parkers with respect to North Carolina law were not "actually and necessarily resolved" as part of the District Court Order.

Collateral estoppel, or issue preclusion, is a related but distinct concept that requires four elements to limit re-litigation of an issue:

(1) the issue sought to be precluded was the same as that involved in the prior action;
(2) the issue was actually litigated;
(3) it was determined by a valid and final judgment; and
(4) the determination was essential to the prior judgment.

*Combs v. Richardson*, 838 F.2d 112, 115 (4th Cir. 1988) (citations omitted). Because, as noted above, there is no final judgment, collateral estoppel cannot apply. Further, the court notes that a determination of whether default interest could be disallowed under North Carolina law was not essential to the District Court Order, as it had not been considered by this court in the 2014 Order and was thus not necessary for the district court's decision to reverse and remand.

## CONCLUSION

Based on the foregoing, the court will consider further argument on the issue of prepetition default interest as the matter remanded from the district court. The parties conceded that the testimonial and documentary evidence is already before the court. For clarity of the court's docket, filings with respect to the prepetition default interest issue shall be made separately from filings related to the Fee Application and Fee Objection.

(1) Within 21 days of the date of this order, the Parkers are directed file a memorandum of law demonstrating how the evidence shows that the claim for prepetition default interest would be

13

impermissible under North Carolina law.[10] The Parkers should include a statement as to whether additional oral argument is requested.

      (2) GCAP may file a responsive memorandum within 21 days after the filing of the Parkers' memorandum, and should include a statement as to whether additional oral argument is requested.

      (3) If the Parkers wish to pursue the Fee Objection, they may file a separate memorandum clarifying the basis for the Fee Objection within 21 days of the date of this order.

      (4) GCAP may file a response to any filing by the Parkers with respect to the Fee Objection within 21 days of that filing.

**END OF DOCUMENT**

---

[10] The court anticipates that GCAP will argue that unconscionability sounds in equity, which the district court has conclusively ruled this court may not consider in a § 502 determination. To the extent the Parkers are relying upon unconscionability under North Carolina law as a basis to deny prepetition default interest, the court expects the Parkers to prospectively address this issue in their memorandum.